UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____X
:
MARC McBREARTY, and PAUL CANTILINA,      :      Civil Action No.:
individually and on behalf of all others      :      2:14-cv-07667 (SDW) (SCM)
similarly situated,      :
:
Plaintiffs,      :
:      **AMENDED CLASS ACTION**
v.      :      **COMPLAINT AND JURY DEMAND**
:
FIFTH GENERATION, INC., d/b/a TITO'S      :
HANDMADE VODKA, and d/b/a MOCKINGBIRD  :
DISTILLERY CORP, ABC CORPORATIONS      :
1 – 10, and JOHN DOES 1 – 10,      :
:
Defendants.      :
_____X

Plaintiffs, Marc McBrearty and Paul Cantilina ("plaintiffs"), on behalf of themselves and a

putative class of similarly situated individuals, allege the following based upon personal knowledge

and based upon information and belief, including, *inter alia*, the investigation made by and through

their attorneys.

## NATURE OF THE CASE

1.      This is a class action case brought on behalf of purchasers (as described below) of

Tito's Handmade Vodka, which is manufactured, distributed, marketed, and/or sold by Fifth

Generation, Inc. d/b/a Tito's Handmade Vodka and d/b/a Mockingbird Distillery Corp. and/or the other

defendants ("defendants").   Class members were damaged by defendants' misrepresentations,

deceptive practices, and other improper actions in violation of the New Jersey Consumer Fraud Act.

In particular, the defendants manufactured, distributed, marketed, and/or sold their "Tito's Handmade

Vodka" to consumers in New Jersey and made misrepresentations, including that the Vodka was

"Handmade", "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery" and

"Distilled Six Times".  In reality, the defendants' Vodka is mass-produced from commercially manufactured "Neutral Grain Spirit" ("NGS").  The mass production process uses modern, technologically advanced machines and equipment in a large industrial facility.  Put simply, the Vodka is not made by human hands and is not "Handmade".

2.    Plaintiffs seek the following relief:

(a)    An award of appropriate damages for all members of the class who purchased the defendants' Tito's Handmade Vodka;

(b)    An award of treble damages and mandatory attorney's fees pursuant to the New Jersey Consumer Fraud Act;

(c)    An award of punitive damages based on the intentional misrepresentations;

(d)    An injunctive order prohibiting defendants from engaging in the same improper acts in the future as provided for in the New Jersey Consumer Fraud Act and/or based on other grounds;

(e)    Disgorgement from defendants of all monies wrongfully obtained as a result of defendants' improper, unfair, and deceptive business acts;

(f)    Certification of a Class (and/or Sub-Classes) as described herein or as the Court deems proper and just pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(g)    Designation of the plaintiffs' counsel as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(h)    Designation of plaintiffs, and/or other class members, as Class Representative(s) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(i)    An award of attorney's fees and case expenses to Class Counsel; and

(j)    Such other relief as the Court deems just and proper.

**PARTIES**

3.      The Plaintiffs, Marc McBrearty and Paul Cantilina, are New Jersey residents, who are filing this case in an individual capacity and as a class action on behalf of all others who are similarly situated.

4.      The defendant, Fifth Generation Inc. d/b/a Tito's Handmade Vodka and d/b/a Mockingbird Distillery Corp. is a Texas corporation with offices and/or operations at, and/or a business address of, 12101 Moore Road, Austin, Texas, 78719.

5.      The true names and capacities of defendants sued herein as ABC Corporations 1 – 10 and John Does 1 – 10 are presently unknown to plaintiffs, who therefore sue these defendants by such fictitious names.  Plaintiffs will seek to amend this Complaint and include these unknown defendants' true names and capacities when they are determined.  Each of the fictitiously-named defendants are responsible in some manner for the conduct alleged herein and for the damages suffered by plaintiffs and the members of the class.

6.      At all times mentioned herein, each and every defendant was an agent and/or employee of each and every other defendant.  In doing the things alleged herein, each and every defendant was acting within the course and scope of that agency and/or employment and was acting with the consent, permission and authorization of each of the remaining defendants.

**JURISDICTION AND VENUE**

7.      This case was filed in State Court and the defendants removed it to Federal Court.

8.      This Court has personal jurisdiction over the parties in this action.

9.      This Court has subject matter jurisdiction over this action based upon the defendants' counsel's representations in the removal papers.

10.      The Court has jurisdiction over the defendants because the defendants conduct business in New Jersey.

11.    Upon information and belief to date, the matter in controversy in this action is a substantial sum or value, which includes actual monetary damages, out-of-pocket expenses, consequential monetary damages, the cost and value of injunctive relief, disgorgement of defendants' ill-gotten gains and related damages, treble damages, punitive damages, attorneys' fees, and/or other damages.

12.    Venue in this Court is proper because the plaintiffs reside in Bergen County.

## BACKGROUND FACTS

13.    At one time, Tito's Handmade Vodka was reportedly made in a small, 16 gallon pot still.  However, the business has grown immensely and the Vodka is now manufactured by automated machines in a highly mechanized process in a large factory facility on a 26 acre operation.  Upon information and belief, the defendants produced approximately 850,000 cases in 2012 and it has continued to increase every year since then.  The defendants had an estimated $85 Million in revenue in 2012 and it has continued to increase every year since then.

14.    The defendants' Vodka is simply not "handmade" as the word is defined in numerous dictionary sources.[1]   (The accepted definitions specifically exclude machine-made products.)   The defendants' Vodka is: (1) made from commercially manufactured "neutral grain spirit" ("NGS") that is trucked in and pumped into Tito's industrial manufacturing facility; (2) distilled in a large industrial complex with modern, technologically advanced machines and stills, many of which are automated; and (3) produced and bottled in extremely large quantities (i.e., it is "mass-produced").

15.    Defendants acted improperly and deceitfully by manufacturing, distributing, marketing and selling Tito's Handmade Vodka with false "Handmade" labels and with related misrepresentations

---

[1] Dictionary.com defines the word "handmade" as "made by hand, rather than by machine".  The Merriam-Webster Dictionary defines the word "handmade" as "made with the hands or by using hand tools".  Webster Dictionary.org defines the word "handmade" as "made by hand or a hand process; as handmade shoes.  Contrasted with machine-made".  The Oxford Dictionary defines the term "handmade" as "made by hand, not by machine, and typically therefore of superior quality".

claiming that the product was "Handmade". That claim is also false and is a misrepresentation. In fact, the product is commercially manufactured in mass quantities in a large factory facility. (See photos of the labels attached as Exhibit A.)

16.    Defendants manufactured, distributed, marketed, and/or sold the Vodka with labels that also prominently claimed that the Vodka was "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery". (See photos of the labels attached as Exhibit A.) Those claims are also false.

17.    Upon information and belief, the defendants' Tito's Handmade Vodka was made, manufactured and/or produced in "massive buildings containing ten floor-to-ceiling stills and bottling 500 cases an hour".[2] Automated machinery is used, which is the complete opposite of the product being "handmade". Likewise, the automated commercial factory process is the complete opposite of the product being "Crafted in an Old Fashioned Pot Still", as the Defendants represent to consumers.

18.    Defendants marketed and represented to the general public that the Vodka was "Handmade" knowing that it simply was not true. They did so, and made the other misrepresentations described herein, while concealing the highly automated nature of the manufacturing and bottling process. Defendants also concealed the fact that the Vodka is no longer made in old fashioned pot stills of the variety Tito's proudly displayed in the 2013 Forbes article (See footnote 2 for discussion of the old shack on the defendants' premises, which contains a previously used pot still cobbled from two Dr. Pepper kegs and a turkey-frying rig to cook bushels of corn). The defendants' concealment, misrepresentations, and/or omissions were improper, deceitful and unlawful.

19.    The defendants continue to advertise, promote, and sell their Tito's Handmade Vodka as "Handmade", "Crafted in an Old Fashioned Pot Still" and "Distilled Six Times" despite the fact that

---

[2] A 2013 article in Forbes magazine noted that the Forbes photographer was purposefully directed away by the Tito's brand manager from "massive buildings containing ten floor-to-ceiling stills and bottling 500 cases an hour and into the shack with the original still, cobbled from two Dr. Pepper kegs and a turkey-frying rig to cook bushels of corn into booze."

they know those statements are blatant misrepresentations. Consumers agree to pay a specific amount for the defendants' Vodka, unaware of the misrepresentations. Examples of the defendants' misrepresentations include the following:

(a)     The labels and/or related packaging materials on the defendants' Vodka state in several places that the defendants' Vodka is "Handmade" despite the fact that that is a blatant misrepresentation and the opposite is true. (See photos of the labels and other product materials attached as Exhibit A.)

(b)     The labels and/or related packaging materials on the defendants' Vodka state that the Handmade Vodka is "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery" despite the fact that that is a blatant misrepresentation and the Vodka is actually made in a large factory full of machines. (See photos of the labels and other product materials attached as Exhibit A.)

(c)     The labels and/or related packaging materials on the defendants' Vodka has a picture/drawing of the purported "Old Fashioned Pot Still" that defendants claim is used to make their Handmade Vodka but, in reality, pictures of the defendants' manufacturing operations and factory reveal that no such "Pot Still" is used as depicted but instead the Vodka is made in a large factory full of machines and automated equipment. (See photos of the labels with the picture/drawing and see photos of actual factory operations from defendants' own website, attached as Exhibit A.)

20.     The defendants' misrepresentations and other improper actions were deceptive business practices and violated the New Jersey Consumer Fraud Act and other applicable statutes.

21.     Consumers are subjected to the defendants' false labeling and deceptive practices described herein. This entire manufacturing process of the defendants is devoid of the caring touch of human hands.

22.     The defendants' misrepresentations are material factors in many consumers' purchasing decisions, as they believe they are purchasing a product made by hand, in small amounts, which is of

inherently superior quality. (See Footnote 1.) Consumers generally believe that "Handmade" products are of higher quality than the alternative products made by automated machines in commercial factories. Consumers pay more for products that are actually "Handmade".

23.    The New Jersey Consumer Fraud Act is designed to protect consumers from these types of false representations and deceptive practices. The defendants' improper actions and deceptive practices fraudulently induced consumers to purchase defendants' Vodka at inflated prices as described herein.

## STATEMENT OF FACTS

24.    The plaintiffs are New Jersey residents and they, as well as the proposed class members, are consumers who purchased the defendants' "Tito's Handmade Vodka".

25.    Over the past several years, plaintiffs Marc McBrearty and Paul Cantilina purchased the defendants' Tito's Handmade Vodka numerous times, including regular purchases at Stew Leonards, Kings, and Bottle King. Plaintiff Paul Cantilina is a member of Bottle King's Buyer's Club. The plaintiffs paid for some of the purchases with credit cards. The plaintiffs' purchases, and the purchases of the other class members and/or sub-class members, are ascertainable through the retailers' records, credit card company records and/or the consumers' records. For example, plaintiff Paul Cantilina's purchases at Bottle King are documented in Bottle King's records, which are available for the time period of June 15, 2012 to the present. The records are in plaintiffs' counsel's possession. The records are written documentation, in specific detail, of the plaintiffs' purchases, including purchases of Tito's Handmade Vodka. Thus, to restate it, information concerning the purchases of the plaintiffs and the class members is ascertainable through such records. Also, the identity of the class members is ascertainable through such records. These statements are not vague conjecture. Plaintiffs' counsel has the records described above. Thus, the defendants' prior argument that information concerning the purchases and/or the class members' identities is not ascertainable is completely without merit.

26.     As alleged herein, at the time of plaintiffs' purchases, the labels and other product materials accompanying the defendants' Vodka prominently stated that it was "Handmade" when in fact there was nothing "Handmade" about the product. (The automated, mass-produced process is described above). The label on the defendants' Vodka also claims that it was "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery", which simply is not true.

27.     When plaintiffs, and class members, purchased the defendants' Vodka they saw and relied upon the "Handmade" representations, and the related representations, that were prominently displayed on all of Tito's Vodka products. (Reliance is not required under the New Jersey Consumer Fraud Act and this allegation is the Complaint should not be construed to suggest it is required.) However, the defendants' representations and claims were false and were misrepresentations.

28.     Simply stated, plaintiffs and class members were deceived as a result of defendants' false labeling and other misrepresentations. Their purchasing decisions were influenced by the representations made by defendants that the product is "Handmade", which is absent from most (if not all) of defendants' competitors. Plaintiffs believed at the time they purchased the Vodka that they were buying a high-quality product made by human hands that was not made in large industrial vats in mass quantities, etc. Plaintiffs class members, and/or sub-class members paid more for the defendants' product based upon the misrepresentations. Examples of the "premium" paid is described in detail herein.

29.     Plaintiffs suffered an ascertainable loss because plaintiffs' money was taken by defendants as a result of the defendants' false claims and misrepresentations as described herein. Furthermore, plaintiffs' suffered an ascertainable loss by paying for something they believed was genuinely "Handmade", when it was not. Once the truth is revealed, the Vodka is not worth the purchase price paid and/or the "premium" paid. Plaintiffs and class members are entitled to monetary

damages and injunctive relief.

30.     The Court ruled previously that plaintiffs' prior Complaint did not sufficiently allege an ascertainable loss.  The plaintiffs disagree with the Court's ruling and the Court's interpretation of case law.  The plaintiffs also disagree with the presiding Judge's prior decisions in the cases cited in the Court's decision on the Motion to Dismiss in this case to the extent that they are relied on, or used to support, the finding that the plaintiffs' prior Complaint did not sufficiently allege an ascertainable loss.  However, in light of the Court's ruling, the plaintiffs allege the following additional detail as examples of the ascertainable loss:

(a)     The Bottle King records reveal that plaintiff purchased 94 bottles of Tito's Vodka for $29.09 in the approximately three year period between June, 2012 and April, 2015.

(b)     The records also reveal that, during that time period, the vodka of two different competitors was priced at $18.98 per bottle and a third competitor's vodka was priced at $21.39 per bottle, with all of the vodkas being of similar quality, characteristics, category, etc. as the defendants' Vodka.

(c)     Thus, in the example using those three competitors' Vodkas for the comparison, the "premium paid" (to use the term in the Court's ruling) for the defendants' vodka was at least $7.70 per bottle and as much as $10.11 per bottle.

31.     Additional information will be obtained in discovery and investigation in the case but the aforementioned specific detail in the example with three competitors' vodka satisfies the requirements in the Court's ruling concerning allegations of ascertainable loss under the New Jersey Consumer Fraud Act. (Again, the plaintiffs maintain that such detail is not required in a Complaint.)

32.     The products the plaintiffs purchased from defendants were not as represented and defendants' actions relating thereto were improper and deceptive.

33.    Plaintiffs received products of lesser value than the product promised and have suffered an ascertainable loss.  The plaintiffs did not receive the benefit of their bargain.

34.    The plaintiffs' and the class members' damages are ascertainable in several ways, including using the information above about the price of the defendants' Vodka and the price of their competitors' Vodka.  The damages can also be ascertained by using the full purchase price, if the Court decides that is an acceptable method for determining the damages.  (That is an issue to be addressed later.) At the time of class certification, and after additional information is obtained, the plaintiff will present a more formal description of the basis for determining "how much of a premium plaintiffs claim to have paid" for the product (to use the Court's language), which may or may not be the amount of the damages. At this time, the information provided in this Amended Complaint satisfies the Court's ruling and is more than sufficient for the pleadings stage of this case. (As noted elsewhere herein, the identity of class members is also ascertainable through the records described in this Amended Complaint.)

35.    The defendants made false and/or misleading statements in their advertisements, sales materials, product labels, and accompanying information.  The defendants' deception is material in that it is likely to influence the purchasing decision of consumers.

36.    The defendants made false and misleading statements, representations of fact, and/or omissions of material fact.

37.    The defendants' acts, practices and advertisements were materially deceptive and misleading.

38.    The defendants' false and misleading acts, practices and advertisements deceived plaintiffs, the class, and/or the sub-class, and had a tendency to deceive.

39.    The defendants' deceptive practices, misrepresentations and/or omissions, were material to reasonable consumers including the plaintiffs, class members, and sub-class members, and were

likely to influence the purchasing decision of those consumers.

40.     Defendants knew, recklessly or intentionally disregarded, and/or reasonably should have known but did not know, about their improper acts, practices and advertisements.

41.     The class members have no complete, speedy, and adequate remedy at law with respect to the defendants' fraud and misrepresentations as well as defendants' other improper acts and/or omissions.  Plaintiffs, and/or the general public, will suffer continuing, immediate, and irreparable injury as a proximate cause of defendants' actions absent injunctive and equitable relief by this Court. The injunctive relief is a separate part of the sum or value of the matter in controversy.

42.     The defendants were given notice by the filing of this lawsuit and the plaintiffs hoped that the defendants would stop the improper actions.  However, they are presently continuing with their improper acts, practices and omissions.  A permanent injunction is required to make certain that the defendants stop doing so.  Since most class members' individual claims for damages are likely to be relatively modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the Class to redress the wrongs done to them.  Important public interests will be served by addressing the matter as a class action, substantial economies to the litigants and to the judicial system will be realized, and the potential for inconsistent or contradictory judgments will be avoided.

## CLASS ACTION ALLEGATIONS

### Class Definition

43.     Plaintiffs file this case in their individual capacity and as a class action on behalf of themselves and all others similarly situated.  The plaintiffs, and/or other class members who may be named as class representatives at the time a motion is filed to certify the proposed Class, will represent the class and/or sub-classes.  The class and/or sub-classes will include New Jersey consumers who

purchased Tito's Handmade Vodka, New Jersey consumers who purchased Tito's Handmade Vodka at

Bottle King, Stew Leonard's and/or Kings, and/or New Jersey consumers who are members of Bottle

King's Buyers Club who purchased Tito's Handmade Vodka at Bottle King. If necessary, there may

also be one or more additional sub-classes of consumers including those who purchased at specific

retail stores.

**Numerosity and Impracticable Joinder**

44.    The class is composed of more than 40 people (and probably hundreds or thousands)

geographically dispersed throughout New Jersey, the joinder of whom in one action is impracticable.

The disposition of their claims in a class action will provide substantial benefits to all parties and the

Court. The class is sufficiently numerous since, upon information and belief, it is estimated that

thousands, tens of thousands, or more bottles of the defendants' Vodka were sold in New Jersey. The

defendants' removal papers state that from 2012 to 2014, they sold more than $5 Million of Tito's

Handmade Vodka to their wholesaler. As noted above, the number of class members, and the

identities of the members of the class and/or sub-classes, is ascertainable.

**Risk of Inconsistent or Varying Adjudications**

45.    Prosecution of separate actions by class members would risk inconsistent or varying

adjudications, which would establish incompatible standards of conduct for the defendants.

46.    Adjudications by individual members of the Class would, as a practical matter, be

potentially dispositive of the interests of other members of the Class and substantially impair or

impede their ability to protect their interests. Class-wide adjudication of these claims, therefore, is

appropriate.

47.    Class-Wide Injunctive/Declaratory Relief. Defendants have acted on grounds generally

applicable to the Class, thereby making final injunctive relief and/or declaratory relief appropriate with

respect to the Class as a whole, rendering class-wide adjudication of these claims appropriate.

**Common Questions of Law and Fact**

48.     There is a well-defined community of interests and there are common questions of law or fact affecting the parties to be represented.  These questions, and other similar factual or legal questions common to the Class, predominate over individual factual or legal questions.  The common questions of law or fact include:

(a)     Whether the defendants acted improperly towards the plaintiffs, class members and/or sub-class members, including their misrepresentations and other deceptive practices concerning their Vodka, which are described herein;

(b)     Whether the defendants violated applicable laws and regulations, including the New Jersey Consumer Fraud Act;

(c)     Whether the defendants knew, recklessly disregarded, or reasonably should have known that their acts and practices violated applicable laws and regulations, including the New Jersey Consumer Fraud Act;

(d)     Whether the defendants engaged in practices intending to, or likely to, deceive reasonable consumers;

(e)     Whether the defendants' advertisements, product labels and related materials contain misrepresentations and/or false statements concerning the product, as described herein;

(f)     Whether the defendants made false or misleading statements or representations of fact;

(g)     Whether the defendants deliberately misrepresented or failed to disclose material facts to the plaintiffs, class members and/or sub-class members;

(h)     Whether there should be equitable and injunctive relief granted in order to protect consumers from defendants' deceptive practices; and

(i)    Whether the plaintiffs and class members should be awarded treble damages and

attorney's fees pursuant to the New Jersey Consumer Fraud Act.

## Typicality

49.    The individual plaintiffs, and/or other class representative(s) to be named, are asserting

claims that are typical of the claims of the entire class, and the class representative(s) will fairly and

adequately represent and protect the interests of the class.  They have no interests that are antagonistic

to those of the other members of the class.

50.    The factual basis of the claims concerning the defendants' misconduct are common to

the members of the Class and represent a common thread of fraudulent misconduct and/or deceptive

business practices resulting in ascertainable loss to all class members.  Plaintiffs are asserting the same

rights, making the same claims, and seeking the same relief for themselves and all other members of

the proposed class and/or sub-classes.

## Fair and Adequate Representation

51.    The class representative(s) will fairly and adequately represent and protect the interests

of the class.  They have no interests that are antagonistic to those of the other members of the class.

The individual plaintiffs have retained counsel who is competent and experienced in the handling of

litigation, including class action litigation and consumer fraud cases.   Counsel will fairly and

adequately represent and protect the interests of the class.

## Predominance of Common Questions of Law or Fact

52.    There are common questions of law or fact that predominate over any questions

affecting only individual members of the Class.  These common legal or factual questions include

those listed herein.

## Superiority of Class Action Treatment

53.    The individual plaintiffs and the members of the class have all suffered harm and/or

damages as a result of defendants' misrepresentations, improper actions, unlawful and wrongful conduct, and/or deceptive practices.

54.    A class action is superior to all other available methods for the fair and efficient adjudication of those claims.    Individual litigation of the claims of all class members is not economically feasible and is procedurally impracticable.    While the aggregate damages sustained by the Class may be in the millions of dollars, the individual damages incurred by each class member resulting from defendants' wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual class members prosecuting their own separate claims is remote, and, even if every class member could afford individual litigation, the Court system would be unduly burdened by individual litigation of such cases.    Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments.    Individualized litigation would magnify the delay and expense to all of the parties and to the Court system because of multiple trials of the same factual and legal issues.    There will be no difficulty encountered in the management of this action that would preclude its maintenance as a class action.    In addition, defendants have acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate. Absent a class action, Defendants will likely retain a substantial amount of money, including millions of dollars, received as a result of its wrongdoing and misleading conduct.    Their improper actions would go un-remedied and uncorrected.    Absent a class action, the class members will not receive restitution.    In addition, damage to future customers of the defendants will continue absent equitable and injunctive relief.    Class action treatment of these claims is superior to handling the claims in other ways.

55.    Certification of the class will be appropriate under Rule 23 of the Federal Rules of Civil

Procedure.

## CLAIMS

56.    Pursuant to notice pleading, plaintiffs hereby allege each and every cause of action and remedy at law or in equity supported by the facts alleged in this Amended Complaint.  Those causes of action and remedies at law or in equity include the following:

### COUNT ONE
### VIOLATIONS OF N.J.S.A. § 56:8-2 *ET SEQ.*
### (NEW JERSEY CONSUMER FRAUD ACT)

57.    Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs of this Complaint marked and designated "1" through "56", inclusive with the same force and effect as though the same was more fully set forth at length herein.

58.    The New Jersey Consumer Fraud Act (hereinafter "Act" or "CFA") states, in relevant part:

> **56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice.**
>
> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

59.    Defendants violated the Act by making misrepresentations to consumers, by improper actions and conduct, and by deceptive practices, as described herein, as well as through other acts, misrepresentations, failures and omissions described herein.  The defendants' act and omissions are in

violation of the Act.

60.    The New Jersey Consumer Fraud Act is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under other remedies.

61.    Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the manufacturing, distribution, marketing, and sale of their Tito's Handmade Vodka.

62.    Defendants represented that their products had characteristics and/or qualities that they did not have, and that their goods were of a particular standard, quality grade, and/or value, which was not true.

63.    In their manufacturing, distribution, marketing, and sale of the products, defendants undertook active and ongoing steps to conceal the truth and have consciously withheld material facts from plaintiffs and other members of the Class with respect to the products.

64.    Defendants' conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances.  The defendants' misrepresentations were material facts that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase.  These facts would influence a reasonable consumers' choice of action during the purchase of their products.

65.    Defendants intended that the plaintiffs and the other members of the Class would rely on their acts of concealment and omissions (although reliance is not required under the New Jersey Consumer Fraud Act) by purchasing the product at full price rather than paying less for it or purchasing competitors' products (some examples of which are noted above).

66.    Had defendants disclosed all material information to Plaintiffs and other members of the Class, they would not have purchased the product, or they would have paid less for it.

67.    The Advertising Regulations, <u>N.J.A.C.</u> 13:45A-9, *et seq.*, promulgated pursuant to the New Jersey Consumer Fraud Act, among other things, address general advertising practices.  In their advertisement, Defendants violated the Advertising Regulations including, but not limited to, by the acts and omissions referred to herein.  Each violation of the Advertising Regulations by Defendants constitutes a *per se* violation of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u>56:8-2.

68.    Defendants violated the aforementioned laws by their unconscionable acts and practices described herein, including misrepresentations, actions, failures and/or omissions.

69.    The individual plaintiffs and class members were caused to suffer damages as a result of Defendants' acts and omissions, including ascertainable losses (which are described above).

70.    Defendants' acts and practices were deceptive, fraudulent, false, concealing and/or misleading.  The defendants made misrepresentations to the customers, both affirmatively and by omission.

71.    Their acts and/or omissions are in violation of the New Jersey Consumer Fraud Act and the Advertising Regulations, and the plaintiffs and other class members in New Jersey have been damaged and are entitled to damages.

72.    Defendants' conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

73.    As a result of the foregoing acts, omissions, and practices, plaintiffs and other members of the Class have suffered an ascertainable loss as a result of purchasing the defendants' products (examples of which are described above).  Plaintiffs are entitled to recover damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, as a result of the forgoing, plaintiffs, on behalf of themselves and on behalf of all other persons similarly situated, pray for the following relief:

(a)     an Order certifying the Class and/or any appropriate sub-classes, appointing the named plaintiffs as Class Representatives, and appointing plaintiffs' counsel as Class Counsel;

(b)     an Order awarding compensatory damages to plaintiffs and all members of the class and/or sub-classes for all claims in the Amended Complaint;

(c)     an award of attorney's fees, case expenses, and costs of suit to the plaintiffs and the class including the mandatory attorney's fees under the New Jersey Consumer Fraud Act;

(d)     an award of treble damages pursuant to the New Jersey Consumer Fraud Act in connection with defendants' improper actions;

(e)     an Order providing for equitable and injunctive relief, including a product recall, notice to consumers, refund to customers, and/or other relief;

(f)     an Order requiring disgorgement of defendants' ill-gotten gains, to pay restitution to plaintiffs and all members of the Class, and to restore to the public all funds acquired by means of any act or practice declared by this Court to be unlawful, fraudulent or unfair business acts or practices, a violation of laws, statutes, or regulations, or constituting unfair competition or false, untrue or misleading advertising;

(g)     judgment against defendants for actual and punitive damages for each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs; and

(h)    such other and further relief as the Court may deem necessary or appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Dated:  September 4, 2015

GAINEY McKENNA & EGLESTON

By:_____
BARRY J. GAINEY (7560)
95 Route 17 South, Suite 310
Paramus, New Jersey 07652
(201) 225-9001
bgainey@gme-law.com

-20-

# EXHIBIT "A"





*Tito's Handmade Vodka*
Designed to be Savored
**DISTILLED SIX TIMES**
Shake once from freezer.
No sugar or gelatin added.
Unanimous Double Gold
Medal Winner of the World
Spirits Competition!
It's in the bottle, so enjoy! *Tito*
VT/ME REFUND 15¢
titosvodka.com
DISTILLED FROM 100% CORN
80 PROOF   1.75L

GOVERNMENT WARNING: (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BE-CAUSE OF THE RISK OF BIRTH DEFECTS. (2) CON-SUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MA-CHINERY, AND MAY CAUSE HEALTH PROBLEMS.

IOWA REFUND 5¢

6 19947 60003

<u>**Tito's first version-original handmade pot still**</u>



Uploaded to Pinterest

http://www.pinterest.com/pin/143200463122021439



| | Search | |

More to explore:    Offices    Originals



| | Like | Image |

Sha...



Uploaded to Pinterest



**TitosVodka** · 2 years ago

Our original pot-still, bottling building. Est. 1995. Still Tito's office.



Added by

**TitosVodka**



Added to

**Tito's Vodka virtua...**

Foll...

1 of 1

10/24/2014 3:47 PM

Search

Like    1        Image                                                    Sha



Uploaded to Pinterest


**TitosVodka** • 2 years ago
Tito's second version handmade pot still


Added by
**TitosVodka**


Added to
**Tito's Vodka virtua...**        Foll



| Search |
| --- |

More to explore:    **tito's vodka**    bottle design    old signs    office walls    silos    offices    rodeo

# Tito's Vodka virtu tour

 TitosVodka









how the bigger sizes of Tito's Vodka get filled

wheeeeee!!! gettin' paletized
1

label rolls
1

# There's more to see...

## Sign up to see the rest of what's here!



| Sign up with Email |
| --- |

Already have an account? **Log in now**